UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL B. ASH,<br><br>          Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>          Defendant. | No. CV 08-756-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 5, 2008, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on February 19, 2008, and June 12, 2008. Pursuant to the Court's Order, the parties filed a Joint Stipulation on October 14, 2008, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on May 6, 1960. [Administrative Record ("AR") at 63, 68, 88.] He has a high school equivalent education and has completed one year of college. [AR at 85.] Plaintiff has past relevant work experience as a pipeline worker. [AR at 80, 91-93.]

On December 1, 2004, plaintiff protectively filed his application for Disability Insurance Benefits, alleging that he has been unable to work since November 24, 2004, due to cognitive disorder, memory loss, and a tumor. [AR at 63-65, 79, 88-90.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 41-42, 43-47, 48-49, 50-54.] A hearing was held on December 13, 2006, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 376-402.] Plaintiff's wife also testified. [AR at 394-97.] A supplemental hearing was held on April 26, 2007, at which time plaintiff again appeared with counsel and testified on his own behalf. [AR at 403-17.] A vocational expert also testified. [AR at 410-14.] On May 11, 2007, the ALJ determined that plaintiff was not disabled. [AR at 15-25.] Plaintiff requested review of the hearing decision. [AR at 7-8.] When the Appeals Council denied plaintiff's request for review on December 8, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 4-6.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ noted that plaintiff asserts that he had not engaged in any substantial gainful activity since the alleged onset date of the disability; the ALJ did not dispute this assertion.[1] [AR at 20.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: cerebral tumor/status post surgeries, cognitive deficits, and affective disorder. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 20-21.] In determining plaintiff's residual functional capacity ("RFC"),[2] the ALJ noted that "no exertionally limiting impairment is credibly documented; that [plaintiff's] cerebral tumor and surgeries have reduced [plaintiff's] auditory acuity minimally and warrant only a restriction from work where fine or acute hearing is necessary for job performance or safety." [AR at 21.] Additionally, the ALJ found that plaintiff "should avoid concentrated exposure to high intensity sound, heights, and dangerous, unguarded, moving machinery." [Id.] Mentally, the ALJ found that plaintiff retained the RFC for "routine and repetitive, entry level, minimally stressful work requiring only superficial interpersonal contact with others." [AR at 21.] At step four, the ALJ concluded that plaintiff was not capable of performing his past relevant work.

---

[1]  The ALJ also determined that plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2009." [AR at 20.]

[2]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

[AR at 24.] At step five, the ALJ found, based on the vocational expert's testimony and use of the Medical-Vocational Rules (specifically Rule 204.00) as a framework, that there are a significant number of jobs in the regional and national economies that plaintiff is capable of performing. [AR at 24-25.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 25.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ impermissibly dismissed the opinion of plaintiff's treating physician. Joint Stipulation ("Joint Stip.") at 4-14. For the reasons set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security

Ruling[3] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

An examining physician's opinion based on independent clinical findings that differ from the findings of a treating physician may constitute substantial evidence. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, (citation omitted) or (2) findings based on objective medical tests that the treating physician has not herself considered." (citation omitted)). However, even if an examining physician's opinion constitutes substantial evidence, the treating physician's opinion is still entitled to deference.[4] See id.; see also SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester, 81 F.3d at 831 (emphasis in original). The opinion of a non-examining physician may serve as substantial evidence when it is consistent with other independent evidence in the record. Id. at 830-31. "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record."

---

[3] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[4] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. In determining what weight to accord the opinion of the treating physician, the ALJ is instructed to consider the following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant medical evidence; consistency of the opinion with the record as a whole; specialization; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

See Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984)).

Here, plaintiff argues that the ALJ failed to properly consider the opinion of plaintiff's treating psychiatrist, Dr. Anthony Duk. Joint Stip. at 4-14. Specifically, plaintiff asserts that the ALJ failed to provide sufficient specific and legitimate reasons for rejecting Dr. Duk's opinion.

The records indicate that plaintiff sought mental health treatment at Loma Linda VA Medical Center from December 2004 through March 2007.[5] [AR at 160-90, 222-72, 276-362, 370-74.] Dr. Duk, a staff psychiatrist at Loma Linda VA Medical Center, treated plaintiff for well over a year. [AR at 222-60, 309-12, 321-22, 324-25, 370-72.] On October 18, 2005, Dr. Duk performed a mental status examination of plaintiff in which he noted that plaintiff's speech was slow, his mood was "ok," his affect was constricted, and his insight and judgment were fair. He diagnosed plaintiff with personality change secondary to closed head injury, amnestic disorder, not otherwise specified ("NOS"), s/p brain glomus tumor, conductive hearing loss (right greater than left), prior polypectomy, and assessed plaintiff with a Global Assessment of Functioning ("GAF") score of 55.[6]

---

[5] On January 4, 2005, Cindy M. Huang, an unlicensed psychology intern working under the clinical supervision of Dr. David C. Anderson, completed a neuropsychological evaluation of plaintiff in order to assess plaintiff's level of cognitive functioning. [AR at 170-76.] A number of tests were performed in connection with the evaluation. Ms. Huang indicated that "[t]he results from a clinical interview and the Beck Depression Inventory suggest that [plaintiff] is experiencing a minimal range of depressive symptoms[,]" and "[t]he results from the PAI-II indicate an elevation on a scale reflective of complaints regarding confusion, concentration, and decision-making" due to a cognitive disturbance and not because of a psychotic disorder. [AR at 174.] Ms. Huang noted that "[a]lthough results from testing indicate that most areas of cognitive functioning for [plaintiff] are within normal limits for persons in the same range of age and education, [plaintiff] exhibits a moderate learning and memory impairment." [Id.] Ms. Huang further noted that plaintiff's "moderate memory impairment is demonstrated by [his] lack of improvement in verbal/auditory free recall, and recognition." [AR at 174.] Ms. Huang indicated that plaintiff's "short delay free recall is in the mild to moderate impairment range while his long delay free recall is in the mild impairment range." [Id.] Ms. Huang concluded that plaintiff's "recognition memory is severely impaired." [Id.] Plaintiff was diagnosed with amnestic disorder due to glomus tumor of the brain, hearing loss of the right ear, occupational and economic problems, and assessed with a Global Assessment of Functioning score of 60. [AR at 174-75.]

[6] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental

[AR at 255-56.] Thereafter, Dr. Duk continued to treat plaintiff on a regular basis and his diagnosis of plaintiff essentially remained the same; however, plaintiff's insight and judgment were noted as "poor" on occasion. [AR at 228-54.]

In November 2006, Dr. Duk completed a Mental Impairment Questionnaire concerning plaintiff's mental condition, in which he indicated that he treated plaintiff on a bi-monthly basis since October 2005. [AR at 222-27.] In the Questionnaire, Dr. Duk diagnosed plaintiff with personality change secondary to closed head trauma, amnestic disorder, NOS, and assessed plaintiff with a current GAF score of 45.[7] [AR at 222.] Dr. Duk noted that plaintiff's treatment included mood stabilization medications for impulsivity, supportive psychotherapy, and journal writing, and indicated that plaintiff's response to treatment was "fair." [AR at 222.] In describing the clinical findings that demonstrate the severity of plaintiff's mental impairments and symptoms, Dr. Duk noted that plaintiff had "[p]oor insight/poor judgment into medical issues and interpersonal relations," "[d]ifficulty following conversation," and "need for judgment clarification." [Id.] Dr. Duk found plaintiff to be stable with minimal improvement over time and noted plaintiff's prognosis as "likely fair to poor." [Id.] Dr. Duk identified plaintiff's signs and symptoms as follows: decreased energy; blunt, flat, or inappropriate affect; feelings of guilt or worthlessness; impairment in impulse control; poverty of content of speech; mood disturbance; difficulty thinking or concentrating; change in personality; emotional withdrawal or isolation; psychological or behavioral abnormalities associated with a dysfunction of the brain with a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities; intense and unstable interpersonal relationships and impulsive and damaging behavior; emotional lability; and oddities of thought, perception, speech or behavior. [AR at 223.]

---

limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 34.

[7] A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34.

In the Questionnaire, in assessing plaintiff's mental ability and aptitude to do unskilled work, Dr. Duk found that plaintiff was "seriously limited, but not precluded"[8] from remembering work-like procedures, sustaining an ordinary routine without special supervision, making simple work-related decisions, performing at a consistent pace without an unreasonable number and length of rest periods, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, and being aware of normal hazards and taking appropriate precautions. [AR at 224.] Dr. Duk also found that plaintiff was "unable to meet competitive standards"[9] in the following work-related categories: (1) understand and remember very short and simple instructions; (2) maintain attention for a two hour segment; (3) maintain regular attendance and be punctual within customary, usually strict tolerances; (4) work in coordination with or proximity to others without being unduly distracted; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms; (6) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (7) respond appropriately to changes in a routine work setting; and (8) deal with normal work stress. [AR at 224.] Dr. Duk elaborated on his findings by noting that plaintiff has "[p]oor retention of session topics discussed and occasional confusion during session." [Id.] Dr. Duk indicated that plaintiff would forget tasks when given several instructions, and was easily distracted. [AR at 224.] Dr. Duk further found -- in determining plaintiff's mental abilities and aptitudes to do semiskilled and skilled work -- that plaintiff was seriously limited, but not precluded, in his ability to deal with stress of semiskilled and skilled work, and was unable to meet competitive standards in his ability to understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others. [AR at 225.] Moreover, in assessing plaintiff's mental ability and aptitude to do particular types of jobs, Dr. Duk found, among other things, that

---

[8] The phrase "seriously limited, but not precluded" means that plaintiff's ability to function in the area in question is seriously limited and less than satisfactory, but not precluded in all circumstances. [AR at 224.]

[9] The phrase "unable to meet competitive standards" means that plaintiff cannot satisfactorily perform the activities in question independently, appropriately, effectively and on a sustained basis in a regular work setting. [AR at 224.]

plaintiff's ability to adhere to basic standards of neatness and cleanliness was seriously limited, but not precluded, and that plaintiff was unable to meet competitive standards in his ability to interact appropriately with the general public. [AR at 225.] Furthermore, Dr. Duk noted that plaintiff had a low IQ score or reduced intellectual functioning. [AR at 225.] With respect to plaintiff's functional limitations, Dr. Duk found that plaintiff was moderately impaired in his ability to maintain concentration, persistence or pace, and markedly impaired in his ability to maintain social functioning. [AR at 226.] Dr. Duk indicated that plaintiff's impairments were "reasonably consistent" with the symptoms and functional limitations described in the Questionnaire. [AR at 227.]

Dr. Duk performed a mental status examination of plaintiff on March 15, 2007, in which he noted that plaintiff's speech was slow, his affect was constricted, and his insight/judgment was poor. [AR at 370.] Dr. Duk diagnosed plaintiff with, inter alia, personality change secondary to closed head injury, amnestic disorder, NOS, and s/p brain glomus tumor, and assessed plaintiff with a GAF score of 41.[10]

In the decision, in rejecting the opinion of Dr. Duk, the ALJ concluded that (1) Dr. Duk's conclusions are completely unsupported by any objective evidence in the VA treating records and the GAF score of 41 assigned to plaintiff by Dr. Duk "is unbelievable in light of [plaintiff's] admitted normal daily activities and long distance driving"; (2) Dr. Duk's opinion is "wholly unpersuasive" and rebutted by psychological consultative evaluator Dr. Rosa Colonna's report, as well as by the State Agency board-certified psychiatrists; and (3) "Dr. Duk is not board-certified in anything and his completely unsupported opinions are therefore entitled to little weight." [AR at 23-24.] Plaintiff contends that the reasons cited by the ALJ are insufficient. As discussed below, the Court agrees with plaintiff.

---

[10] In the neuropsychology evaluation report dated February 21, 2007, which was completed at the request of Dr. Duk, plaintiff was found based on testing to "demonstrate progressive decline in memory performance." [AR at 373-74.] Further, plaintiff's verbal learning across five learning trials was in the moderately impaired range and his memory was in the severely impaired range overall with severely impaired recognition memory. [AR at 373.] Also, plaintiff's visual memory was severely impaired at short and delayed recall with impaired recognition memory. [AR at 373.]

First, the ALJ's assertion that the conclusions of Dr. Duk are not supported by any objective evidence, without more, is insufficient to constitute a specific and legitimate reason for rejection of Dr. Duk's opinion. [AR at 23.] The ALJ's conclusory assertion does not reach the level of specificity required in order to reject the opinion of a treating physician. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct.") (footnote omitted); see also McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejecting the treating physician's opinion on the grounds that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Second, the ALJ's assertion that the opinion of Dr. Duk was not supported by any objective medical findings is not entirely accurate. It is improper to reject a treating physician's opinion where he provided at least some objective observations and testing in addition to subjective opinions. See Embrey, 849 F.2d at 421; see also 20 C.F.R. §§ 404.1527, 416.927 (the proper weight that an ALJ should give to a treating physician's opinion depends on whether sufficient data supports the opinion and whether the opinion comports with other evidence in the record). Dr. Duk's opinion is supported by the treatment records and objective medical evidence. Dr. Duk treated plaintiff for an extended period on a regular basis, conducted thorough examinations of plaintiff, prescribed medications to plaintiff, and referred plaintiff for MRI testing and a neuropsychology evaluation as evidenced by the progress notes contained in the treatment record. [AR at 222-60, 268-72, 279-82, 309-12, 321-22, 324-25, 370-74.] Notably, the results of the neuropsychological evaluation completed by Ms. Huang, as well as the neuropsychology evaluation report dated February 21, 2007, completed at the request of Dr. Duk, support Dr. Duk's March 15, 2007, GAF assessment of 41. [AR at 170-76, 372-74.] See supra, fns. 5, 10. Further, during the course of plaintiff's treatment, Dr. Duk performed numerous mental status examinations

of plaintiff, in which Dr. Duk noted that plaintiff's speech was slow, his affect was constricted, and his insight/judgment was poor. [AR at 228, 231, 234, 237, 241-42, 245, 249, 252-53, 255-56, 258-59, 309, 370.] Also, at the request of Dr. Duk, an outside MRI of the brain and an MRI of the brain with brain stem were performed on October 2, 2006, and June 26, 2006, respectively. The MRI tests revealed minor abnormalities and post-surgical changes with surgical packing material within the right mastoid air cells due to removal of a glomus tumor. [AR at 268-72, 279-82.] Additionally, Dr. Duk in his progress notes referenced the results from plaintiff's previous laboratory testing on June 3, 2005. [AR at 228, 232, 234, 238, 242, 246, 249, 253, 256, 259, 283-87, 309, 370.] Given that the treatment records, which include mental status examinations performed by Dr. Duk, as well as the objective tests (MRI tests and neuropsychology evaluation containing various tests) performed at the request of Dr. Duk, lend support to Dr. Duk's conclusions that plaintiff suffered from personality change secondary to closed head injury and amnestic disorder, NOS, and had a GAF score of 41,[11] the ALJ's rejection of the opinion of Dr. Duk as lacking supporting objective evidence itself lacks substantiation.

Next, the ALJ's statement that "Dr. Duk's assessment is rebutted by the State Agency board-certified psychiatrists and Dr. Colonna, whose realm of expertise this case most closely lies," does not support his rejection of Dr. Duk's opinion as this general statement by the ALJ is not a legally permissible reason for rejection of the opinion of a treating physician. See Embrey,

---

[11] Although prior to November 2006, Dr. Duk assessed plaintiff with a GAF score of 55 [AR at 229, 232, 235, 238, 242, 246, 250, 253, 256, 259, 310], in the Mental Impairment Questionnaire completed in November 2006, Dr. Duk assessed plaintiff with a current GAF score of 45 [AR at 222], and in the March 15, 2007, progress note, Dr. Duk assessed plaintiff with a GAF score of 41. [AR at 371.] The ALJ's assertion that the GAF score of 41 assigned to plaintiff by Dr. Duk "is unbelievable in light of [plaintiff's] admitted normal daily activities and long distance driving" does not accurately reflect the record as a whole. [AR at 23.] See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"). Here, the ALJ has simply isolated evidence in the record, i.e., certain daily activities of plaintiff and a single response from plaintiff at the December 13, 2006, hearing -- that he drove to Laughlin, Nevada -- in order to support his non-disability determination. Moreover, the neuropsychological evaluations of January 4, 2005, and February 21, 2007 [AR at 170-76, 372-74], lend support to Dr. Duk's GAF assessment of 41, which indicates serious symptoms or a serious impairment in social, occupational, or school functioning. See DSM-IV at 34. See supra, fns. 5, 10.

849 F.2d at 421-22 (conclusory reason "does not achieve the level of specificity" required to justify an ALJ's rejection of a treating source's medical opinion). Indeed, both Dr. Duk and Dr. Colonna are mental health professionals, despite the fact that Dr. Duk's area of speciality is in psychiatry, while Dr. Colonna's area of speciality is in clinical psychology. Although the ALJ in the decision indicated that Dr. Colonna's opinion was entitled to more weight than Dr. Duk's opinion because plaintiff's condition was primarily psychological and more closely related to Dr. Colonna's area of speciality, the ALJ also relied on the opinions of the State Agency board-certified psychiatrists in rejecting Dr. Duk's opinion. Therefore, the ALJ's rejection of Dr. Duk's opinion because Dr. Colonna's area of expertise is more closely related to plaintiff's mental health issues is insufficient in this instance, given the ALJ's reliance on the State Agency psychiatrists.

Moreover, the ALJ's reliance on the opinion of consultative psychological evaluator Dr. Colonna, without a proper rejection of Dr. Duk's opinion, is improper.[12] Generally, more weight is given to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). As discussed above, Dr. Duk treated plaintiff for well over a year on a frequent basis, performed mental status examinations, and prescribed medications. See 20 C.F.R. §§ 404.1527(d)(2)(i), (ii), 416.927(d)(2)(i), (ii) (weight accorded to a treating physician's opinion

---

[12] Dr. Colonna found that plaintiff's "overall cognitive ability falls within the low average range." [AR at 368.] Dr. Colonna determined that plaintiff "would be able to understand, remember and carry out short, simplistic instructions without difficulty" and "would be able to make simplistic work-related decisions without special supervision." [Id.] Dr. Colonna indicated that plaintiff presented with "a mild inability to understand, remember and carry out detailed instructions." [Id.] Dr. Colonna noted that plaintiff "is socially appropriate with the examiner," "does appear able to manage finances on his own behalf," "would be able to interact appropriately with supervisors, coworkers and peers," and "does not . . . present with any mood or affective disturbance." [AR at 368.] Dr. Colonna opined that plaintiff "may benefit from cognitive restructuring and cognitive training for alleged short-term memory loss." [Id.] The ALJ found Dr. Colonna's report to be thorough and well-supported, and thus gave it significant weight. [AR at 23.]

dependent on length of the treatment relationship, frequency of visits, and nature and extent of treatment received). Based on the length of the treatment relationship and Dr. Duk's experience with plaintiff, Dr. Duk had the broadest range of knowledge regarding plaintiff's medical conditions, which is supported by the record. See Smolen, 80 F.3d at 1279; see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment."). The ALJ may only give less weight to a treating physician's opinion that conflicts with that of another physician if the ALJ provides sufficient specific and legitimate reasons for discounting the opinion. See SSR 96-2p; see also 20 C.F.R. §§ 404.1527(d), 416.927(d); Lester, 81 F.3d at 830; Orn, 495 F.3d at 632-33. Here, the ALJ indicated that the conclusions of plaintiff's treating physician were "actively rebut[ted]" by Dr. Colonna's report. The ALJ's statement does not support his rejection of Dr. Duk's opinion as he failed to discuss the entirety of Dr. Colonna's report in the decision. Specifically, the ALJ ignored Dr. Colonna's recommendation that plaintiff "may benefit from cognitive restructuring and cognitive training for alleged short-term memory loss," which supports Dr. Duk's opinion. [AR at 368.] As such, the ALJ's findings that Dr. Colonna's report was "well-supported" and entitled to "significant weight" were based on the ALJ's selective reliance on the portions of Dr. Colonna's report that were favorable to his determination of nondisability. [AR at 23.] This is improper. The ALJ cannot pick and choose from the evidence in order to support his conclusions. See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)).

Finally, the ALJ's conclusion that Dr. Duk's "completely unsupported" opinions are entitled to "little weight" because he "is not board-certified in anything" is not a legally sufficient reason to reject Dr. Duk's findings. Although the regulations generally provide that greater weight be given to opinions of specialists, they do not require that a physician be board-certified to provide medical

evidence. See 20 C.F.R. §§ 404.1513(a), 416.913(a) (generally more weight is given to the opinion of a treating source); see also 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) (more weight is generally given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist). Dr. Duk is not only a treating physician, he is a specialist in psychiatry, the field in which his opinion was rendered. Thus, Dr. Duk's opinion was not only entitled to more weight because he is a treating physician, but also because he is a specialist, irrespective of whether he was board-certified. See Lester, 81 F.3d at 833 (treating physician's opinion may not be discredited on the ground that he is not a board-certified psychiatrist). Furthermore, the Court notes that there is no indication in the record that Dr. Colonna, upon whose opinion the ALJ relied and to which he assigned significant weight, is in fact board-certified.

Accordingly, the ALJ did not apply the proper legal standard in his analysis of plaintiff's treating physician's opinion. Because the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Duk's opinion, Dr. Duk's findings in the Questionnaire are credited as a matter of law. See Lester, 81 F.3d at 834 (where the ALJ "fails to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "'as a matter of law.'") (citation omitted). Remand is warranted on this issue.[13]

/
/
/
/

---

[13] On remand, the ALJ is directed to credit as true Dr. Duk's findings in the Mental Impairment Questionnaire and to reevaluate plaintiff's RFC in light of Dr. Duk's findings in the Questionnaire. See Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989) (crediting the examining physician's opinion as a matter of law when the ALJ failed to adequately explain reasons for rejecting it); see also Adame v. Apfel, 2002 WL 202377 (N.D. Cal. Jan. 31, 2002) (crediting as a matter of law the opinions of plaintiff's two treating physicians and remanding the case for the purpose of identifying plaintiff's transferable job skills and for determining whether there are a significant jobs in the national economy that plaintiff could perform).

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order to reassess plaintiff's RFC in light of Dr. Duk's findings in the Mental Impairment Questionnaire. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: January 6, 2009

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

16